UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>    Aaron M. Cook,<br><br>                Debtor. | Case No.  07-31763-mcr<br>Chapter 7 |
| David Contini,<br><br>                Plaintiff,<br>v.<br><br>Aaron M. Cook<br>f/d/b/a East Coast Terminal, LLC,<br><br>                Defendant. | Adv. Proc. No. 07-50072-mcr |

Appearances:

Hinman, Howard & Kattell, LLP          Thomas W. Cusimano, Jr.
Attorneys for Plaintiff                Ronald L. Greene
700 Security Mutual Building           Of Counsel
80 Exchange Street
P.O. Box 5250
Binghamton, NY 13902-5250

Meagher & Meagher                      Frederick J. Meagher, Jr.
Attorneys for Defendant                Of Counsel
15 Hawley Street
Binghamton, NY  13901

Hon. Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

<u>MEMORANDUM-DECISION</u>

David Contini ("Plaintiff") seeks to except from discharge a debt owed by Aaron M. Cook ("Debtor") in the amount of $104,900.00.  Plaintiff seeks to declare the entire debt, which was reduced to judgment prior to filing, nondischargeable under sections 523(a)(4) and (6) of the

1

United States Bankruptcy Code.[1] The allegations regarding nondischargeability of the underlying debt, which was incurred in connection with a failed business transaction, are based upon an incident involving vandalism of leased premises and looting of personal property. Debtor answered the complaint by way of a general denial. A trial was held on February 8, 2008, at which, in addition to testimony from Plaintiff and Debtor, the court heard testimony from John Lee and Robert Ellis for Plaintiff and Sean Chilson for Debtor. This memorandum-decision incorporates the court's findings of facts and conclusions of law as permitted by Fed. R. Bankr. P. 7052. The parties recognize the court's core jurisdiction under 28 U.S.C. section 157(b)(2)(I).

## BACKGROUND

As testified to at trial, Plaintiff is the former owner of East Coast Terminal, LLC ("East Coast"), an indoor skateboarding and bicycle motocross facility located in a building that he owns ("Building"). Patrons of East Coast, typically males between 14 and 27 years old, either paid a daily admission fee or purchased a membership pass for use of the facility. In addition to skateboarding and biking, East Coast patrons could purchase equipment and gear from East Coast's retail shop.

Debtor was a frequent patron of East Coast, and later became an East Coast employee. At some point, Debtor and Plaintiff discussed Debtor buying the business. In September 2004, Debtor purchased Plaintiff's interest in East Coast for $102,000.00.[2] Debtor financed a portion of the purchase price by signing a promissory note in favor of Plaintiff in the amount of $87,000.00 ("Note"). To secure payment of his obligations under the promissory note, Debtor signed a security agreement dated September 2, 2004 ("Security Agreement"), which granted

---

[1] 11 U.S.C. §§ 101–1532 (2008) ("Code").
[2] See "Membership Interest Agreement" entered into by and between Debtor, as purchaser, and Plaintiff and Jonathan Herweg, as sellers, dated September 2, 2004, received into evidence as Plaintiff's Exhibit 6.

Plaintiff a security interest in all of East Coast's accounts, equipment, general intangibles, instruments and inventory ("Collateral").[3]

The Security Agreement imposed certain obligations upon Debtor. Debtor was not to "sell or otherwise transfer, abandon . . . or dispose of the Collateral . . . without the prior written consent of [Plaintiff]," or "waste or destroy or abuse the Collateral," and was to "immediately notify [Plaintiff] in writing of any damage to or loss of the Collateral." (Pl.'s Ex. 5 ¶¶ 3–5.) The equipment covered by the Security Agreement consisted of such items as skateboard ramps, cash registers and vending machines. The covered inventory were items stocked for sale in East Coast's retail shop which included skateboard decks, videos, t-shirts, miscellaneous bike parts and shoes.

According to Debtor's testimony, soon after Debtor purchased East Coast, business began to decline. The Debtor attributed the downturn in business of East Coast to competition from a brand new skatepark that had opened nearby and the deteriorating condition of the East Coast premises. Debtor testified that when he purchased East Coast, the Building's roof had a "few" leaks but that Plaintiff had agreed to fix them. Debtor testified that over time the leaks increased in number to seventeen, despite his ongoing requests to have the leaks repaired. Plaintiff never repaired the roof.[4] Because East Coast was located in the space directly beneath the roof, water would leak onto the skateboard ramps and floors when it rained, making the skatepark unsafe and unappealing to patrons.

It is undisputed that by September 2005 Debtor had defaulted on his payment obligations to Plaintiff under the Note and Security Agreement. Notwithstanding Debtor's ongoing defaults,

---

[3] See "Security Agreement" entered into by and between Debtor, as grantor, and Plaintiff and Jonathan Herweg, as grantees, dated September 2, 2004, received into evidence as Plaintiff's Exhibit 5.
[4] Debtor's request was also communicated by his counsel in a letter dated January 11, 2006, which was received into evidence as Defendant's Exhibit B.

3

East Coast continued to operate as usual until early June 2006, when rumors that East Coast would be closing began to circulate in the skateboarding community.

By June 8, 2006, East Coast's business problems became public knowledge. Plaintiff's witness, John Lee, an employee of FBM Bicycle Company ("FBM"), testified that on June 8, 2006, he removed all FBM merchandise from East Coast's retail shop at the behest of his employer. FBM was a co-tenant in the Building, and supplied East Coast with bicycle parts on a consignment basis. Mr. Lee testified that the value of the removed FBM merchandise was between $200.00 and $300.00. Mr. Lee further testified that on June 8, 2006, he observed Debtor's then-on-duty manager, Jesse Ryan, allowing two individuals to "redeem" the balance of their East Coast memberships by taking merchandise from the retail shop. Mr. Lee surmised that this "redemption" was Mr. Ryan's attempt to reimburse members for the purchase of membership passes that would soon be worthless.

Debtor produced the testimony of Sean Chilson.[5] Mr. Chilson, an out-of-town acquaintance of Debtor, had arrived in town and stopped by East Coast the evening of Friday, June 9, 2006, to visit with Debtor. When he learned that Debtor was away from East Coast, Mr. Chilson stayed but a few minutes before leaving. Mr. Chilson testified that Debtor was not there but that Mr. Ryan was present. During his brief time at East Coast, he observed skateboard ramps being disassembled and loaded upon trucks. This testimony is consistent with the testimony of Plaintiff's witness, Mr. Lee, who testified to witnessing the disassembly and

---

[5] Plaintiff objected to the allowance of Mr. Chilson's testimony at trial, claiming that Mr. Chilson had not been properly noticed as a witness. The court overruled this objection, finding that there would be no undue prejudice nor surprise as to the substance of the testimony. Debtor counsel represented that he had in fact noticed Mr. Chilson as a witness, albeit informally, which the court accepted given the uncertainty surrounding Debtor counsel's continued representation of Debtor during the period immediately preceding the trial. Debtor's counsel made two motions to withdraw as counsel on January 18, 2008, and January 28, 2008, both of which were denied. Plaintiff further objected to the allowance of Mr. Chilson's testimony on the grounds that Mr. Chilson had been present in the courtroom during prior testimony. The court overruled the objection. Plaintiff failed to request the exclusion of Mr. Chilson from the courtroom at the outset of the hearing pursuant to Fed. R. Evid. 615.

removal of skateboard ramps from East Coast. Mr. Lee testified that Debtor was not present at East Coast on Thursday evening June 8, 2006, but that Mr. Ryan was present at that time.

The parties agree that sometime between Thursday, June 8, 2006, and the evening of Friday, June 9, 2006, East Coast was vandalized and looted ("Incident"). Debtor testified that on Wednesday, June 7, 2006, troubled by business concerns and his father's declining health, he had left town to go fishing for a few days and did not return until the early hours of Saturday, June 10, 2006. Plaintiff presented no evidence to controvert Debtor's testimony that Debtor was unaware of what was happening at East Coast during this time period.

On Thursday, June 8, 2006, while out of town, Debtor spoke by telephone with Mr. Ryan. Debtor described Mr. Ryan as being in a "panicked state" during this conversation. Mr. Ryan had heard rumors that Plaintiff "was coming" to take East Coast back and offer it to someone else. Debtor said he attempted to calm Mr. Ryan by explaining to him that "things did not work that way." This conversation appears to have been Debtor's first insight that something was amiss at East Coast.

Prompted by this conversation, Debtor testified that he first learned of the Incident when he stopped by East Coast on "Friday night, at about 1:30 a.m." to check on the business.[6] Upon entering East Coast, Debtor saw that the retail shop had been vandalized and emptied of its inventory. Debtor attributed the absence of inventory to Plaintiff's self-help recovery efforts and testified that he then left the premises without any further investigation. Debtor did not report the Incident to Plaintiff, the police or his insurance carrier.

Plaintiff learned of the Incident shortly after it happened, and testified that he went to East Coast on Sunday, June 11, 2006. Upon entering East Coast, Plaintiff testified that he

---

[6] The court understands Debtor's testimony to mean that he visited East Coast at approximately 1:30 a.m. on Saturday, June 10, 2006.

5

observed that doors had been ripped off their hinges, lights had been smashed and toilets had been broken. The retail shop was in utter disarray. Glass display cases were broken and empty. Retail clothing racks were empty and strewn about. Broken beer bottles littered the floor and the television was missing. Moving beyond the retail shop, Plaintiff saw that the skatepark walls and ramps were covered with graffiti. Some of the skateboard ramps were missing and others were in pieces.

Plaintiff returned to East Coast on Monday, June 12, 2006, accompanied by Plaintiff's witness, Robert Ellis. Mr. Ellis described the scene at East Coast as one of "vast destruction." Mr. Ellis testified that the skatepark was covered with a tremendous amount of graffiti, with expletives directed at Plaintiff.[7] Mr. Ellis viewed the Incident as a personal attack on Plaintiff based upon the content of the graffiti and the absence of vandalism to Mr. Ellis' storage space in the Building, which was readily accessible from the East Coast space.[8]

On Wednesday, June 14, 2006, Plaintiff filed a report with the Johnson City Police Department, detailing his damages.[9] Although the police department conducted an investigation, no one was ever charged in connection with the Incident. Plaintiff also filed a property damage claim with his insurance company.

Plaintiff then pursued Debtor in state court for the outstanding balance owed on the Note. The state court entered judgment on October 6, 2006, in favor of Plaintiff and against Debtor in the amount of $104,900.00 ("Judgment Debt").[10] Debtor filed his voluntary petition for chapter 7 relief on July 6, 2007. On October 2, 2007, Plaintiff commenced the instant adversary proceeding.

---

[7] See photographs received into evidence as Plaintiff's Composite Exhibits 12 and 15.
[8] Mr. Ellis testified that there were several different ways to get from East Coast's space to the 10,000 sq. ft. space that he leased in the Building.
[9] See "Police Report" dated June 14, 2006, received into evidence as Plaintiff's Exhibit 8.
[10] See "Judgment" entered October 17, 2006, received into evidence as Plaintiff's Exhibit 7.

DISCUSSION

Plaintiff bears the burden of establishing, by a preponderance of the evidence, the elements of an exception to discharge pursuant to Code sections 523(a)(4) and (6).  Grogan v. Garner, 498 U.S. 279, 291 (1991).  Exceptions to discharge must be strictly construed so as to give maximum effect to the policy of the Code to provide debtors with a "fresh start."  Geiger v. Kawaauhau (In re Geiger), 113 F.3d 848, 853 (8th Cir. 1997), aff'd, 523 U.S. 57 (1998).

Code section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).[11]  Plaintiff introduced no testimony or other evidence to establish that Debtor acted as a fiduciary to Plaintiff.  Thus, Plaintiff cannot maintain a claim for fraud or defalcation while acting in a fiduciary capacity under Code section 523(a)(4).  See Barristers Abstract Corp. v. Caulfield (In re Caulfield), 192 B.R. 808, 818 (Bankr. E.D.N.Y. 1996); see also DeRosa v. Jacone (In re Jacone), 156 B.R. 740, 744 (Bankr. S.D.N.Y. 1993).

However, no fiduciary relationship is required for a claim of nondischargeability resulting from larceny or embezzlement.  Zohlman v. Zoldan, 226 B.R. 767, 773 (S.D.N.Y. 1998).  The elements of larceny and embezzlement under Code section 523(a)(4) are governed by federal common law.  In re Caulfield, 192 B.R. at 818.  Larceny is defined as "the fraudulent and wrongful taking and carrying away [of] the property of another with intent to convert such property to the taker's use without the consent of the owner."  Id.  The creditor must show that the debtor "wrongfully took property from the rightful owner with fraudulent intent to convert such property to [the debtor's] own use without the owner's consent."  Dynamic Food Serv. Equip., Inc. v. Stern (In re Stern), 231 B.R. 25, 26 (S.D.N.Y. 1999) (citing Kay v. Rose (In re

---

[11] The court notes that Plaintiff's only reference to his Code section 523(a)(4) claim is in the Complaint.  Both Plaintiff's pre-trial and post-trial memoranda focus solely on Plaintiff's Code section 523(a)(6) claim.

7

Rose), 934 F.2d 901, 903 (2d Cir. 1991)). Although Plaintiff had a security interest in the Collateral, the evidence shows that Debtor was its rightful owner. (Pl. Ex. 5 ¶ 1.) Thus, Plaintiff cannot maintain a claim under Code section 523(a)(4) for larceny.

Embezzlement is defined under federal common law as the "fraudulent appropriation of money by a person to whom such property has been entrusted or into whose hands it has lawfully come." Moore v. United States, 160 U.S. 268, 269 (1895); In re Caulfield, 192 B.R. at 818 (collecting cases); see also Moog Employees Fed. Credit Union v. Kibler (In re Kibler), 172 B.R. 740, 742 (Bankr. W.D.N.Y. 1994) (finding no claim for embezzlement where debtor disassembled an automobile, owned by debtor, which served as credit union's collateral). Where title to the property is in the debtor, there can be no embezzlement. In re Caulfield, 192 B.R. at 819. Plaintiff has not shown that Debtor appropriated any property belonging to Plaintiff. Thus, Plaintiff cannot maintain a claim under Code section 523(a)(4) for embezzlement. For the foregoing reasons, Plaintiff's claim for an exception to discharge pursuant to Code section 523(a)(4) must fail.

Code section 523(a)(6) excepts from discharge any debt arising from the "willful and malicious injury by a debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Plaintiff claims that Debtor willfully and maliciously injured Plaintiff and Plaintiff's property: 1) through conversion of the Collateral and damage to the Building; 2) by leaving East Coast in the charge of Mr. Ryan, an untrustworthy employee; and 3) by failing to report the Incident, thus prejudicing Plaintiff's recovery efforts.

The court first considers Plaintiff's claim that Debtor willfully and maliciously injured Plaintiff and Plaintiff's property through conversion of the Collateral and damage to the Building. Conversion is "an unauthorized assumption and exercise of the right of ownership

8

over goods belonging to another to the exclusion of the owner's rights." Peters Griffin Woodward, Inc. v. WCSC, Inc., 88 A.D.2d 883, 883 (N.Y. App. Div. 1st Dep't 1982). Code section 523(a)(6) has been held to include wrongful conversions of property subject to a security interest. In re Bossard, 74 B.R. 730, 736 (Bankr. N.D.N.Y. 1987). There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of Code section 523(a)(6). Deere & Company v. Contella (In re Contella), 166 B.R. 26, 29 (Bankr. W.D.N.Y. 1994).

From the record established at trial, it is apparent and not undisputed that one or more persons without authority assumed and exercised rights of ownership over the Collateral. There is, however, no evidence to support a finding that Debtor was personally involved with either the conversion of the Collateral or the damage to the Building. To the contrary, the evidence establishes that Debtor was not present when the acts of vandalism, destruction and looting of the Collateral took place. Nor does the fact that one of those persons may have been an employee of Debtor alter the court's analysis. The acts of another, even an employee of the Debtor, cannot provide the basis for a Code section 523(a)(6) claim against the Debtor.

Under Code section 523(a)(6), it is the debtor who must act in causing the willful and malicious injury to another entity or to the property of another entity. A person's willful and malicious actions cannot be imputed to another person or entity for the purposes of holding that debt nondischargeable under Code section 523(a)(6). Davis v. Tomasek (In re Tomasek), 2006 U.S. App. LEXIS 8746, *15 n.4 (5th Cir. 2006) (citing In re Bucak, 278 B.R. 488, 496 n.7 (Bankr. W.D. Tenn. 2002)). Nondischargeability of a debt under Code section 523(a)(6) "cannot be grounded on the imputation to the debtor of the acts of another." Columbia Farms

9

Distribution, Inc. v. Maltais (In re Maltais), 202 B.R. 807, 813 (Bankr. D. Mass. 1996); Thatcher v. Austin (In re Austin), 36 B.R. 306, 312 (Bankr. M.D. Tenn. 1984).

Thatcher is often cited for its discussion of vicarious or imputed liability. In Thatcher, the next of kin of a pedestrian killed by an intoxicated, underage concert patron brought a nondischargeability action against the debtors, who were promoters of the concert, for their failure to prevent the underage patron from consuming unrestricted amounts of free beer. 36 B.R. at 307–08. The plaintiff argued that the company hired by the debtors to supply the beer willfully and maliciously violated state laws regulating beer distribution and these acts should be imputed to the debtors. Id. at 308. In rejecting the plaintiff's claim, the court found as follows:

> There is nothing in the language or legislative history of § 523(a)(6) to suggest that common law notions of vicarious or imputed liability are appended to the statutory exceptions to a discharge in bankruptcy. Quite to the contrary, application of vicarious liability would effectively vitiate the § 523(a)(6) requirement that only debts resulting from *willful* acts committed *by the debtor* be nondischargeable. Vicarious liability as a social policy or legal fiction ignores the master's knowledge and imposes fault and financial responsibility without regard to culpability or intent. Section 523(a)(6) is founded on the contrary notion that only a debt resulting from the deliberate acts of the debtor can be excepted from discharge in bankruptcy. In the absence of clear statutory exception for "vicarious acts," the legislative intent to permit a broad discharge in bankruptcy should not be emasculated by common law tort principles.

Id. at 311–12. Thus, the acts of others relating to conversion of the Collateral and damage to the Building cannot form the basis of a finding of nondischargeability under Code section 523(a)(6).

The court next considers Plaintiff's claim that Debtor willfully and maliciously injured Plaintiff and Plaintiff's property by leaving Mr. Ryan in charge of East Coast while Debtor took a few days off from work. As used in Code section 523(a)(6), the word "willful" indicates "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). Negligent or reckless acts do not suffice to

establish that a resulting injury is willful and malicious. Id. at 63 (citing Davis v. Aetna Acceptance Co., 293 U.S. 328, 332 (1934)).

Debtor testified that he had left town for a few days on a fishing trip to alleviate his feelings of stress concerning the business and his father's poor health, and that he placed his manager and only employee, Mr. Ryan, in charge of East Coast while he was away. Based upon Debtor's testimony that Mr. Ryan was primarily responsible for East Coast's daily business operations during the month of May and early June 2006, it is apparent that Debtor had previously left Mr. Ryan in charge at East Coast prior to his trip out of town. Debtor testified that he would not say that he "trusted" Mr. Ryan, stating Mr. Ryan was a "very emotional character," and that he did not always agree with Mr. Ryan's judgment calls. Debtor further testified that at the time of the Incident he thought Mr. Ryan was an honest man.

In light of Debtor's mixed testimony regarding his perception of Mr. Ryan's character and judgment, Debtor's choice to leave Mr. Ryan in charge at East Coast might be questioned as negligent or reckless. Upon the testimony and all of the circumstances including the reasons Debtor went out of town, and the fact that Mr. Ryan had previously managed East Coast without incident, this court does not infer that Debtor was motivated by a malicious plan to damage the Building or to convert the Collateral when he left Mr. Ryan in charge and went out of town. A debt based upon a reckless act that results in an unintended injury is dischargeable. Hi-Qual Roofing & Siding Materials, Inc. v. Ridsdale (In re Ridsdale), 286 B.R. 225, 235 (Bankr. W.D.N.Y. 2002). Thus, even if reckless, Debtor's act of leaving East Coast in the charge of Mr. Ryan, cannot form the basis of finding the debt nodischargeable under Code section 523(a)(6).[12]

---

[12] The Judgment Debt, which is based upon the outstanding balance owed on the Note, bears no relationship to the amount of debt that would be nondischargeable under section 523(a)(6) for willful and malicious injury to property. In light of this court's finding that the record does not support a finding of nondischargeability on the legal merits of the claim, the court does not address or quantify a value for the property that was vandalized and/or looted.

11

Finally, the court considers Plaintiff's claim that Debtor willfully and maliciously injured Plaintiff and Plaintiff's property by failing to report the Incident to Plaintiff, the police or Debtor's insurance carrier. In all likelihood, the Incident took place the evening of Friday, June 9, 2006. Plaintiff was aware of the Incident not later than Sunday, June 11, 2006, when, as Plaintiff testified, he personally visited East Coast to survey the situation. Police were notified, albeit by Plaintiff, not later than June 14, 2006, the date of the Johnson City Police report. No evidence was produced to show that the short interval between the Incident and its discovery by Plaintiff and reporting to the police impeded any police investigation or caused Plaintiff or his property further injury.

Debtor testified that he did not notify Plaintiff or the police of the Incident because he believed that Plaintiff had taken the inventory as a self-help remedy for Debtor's ongoing defaults. The court finds Debtor's explanation to be credible, based upon Debtor's payment defaults and knowledge of the rumors circulating concerning Plaintiff's intention to "take back" the business. It is plausible that Debtor thought Plaintiff had come to East Coast and recovered the inventory portion of his Collateral. This explanation suffices to eliminate any suspicion that Debtor's failure to notify Plaintiff or the police of the loss of inventory was motivated by malice.

Debtor further testified that when he visited East Coast on June 9, 2006, he did not go beyond the retail shop, and hence was unaware that the vandalism and looting extended into the skatepark. The court finds that Debtor did not know about the further vandalism and looting of the skatepark, which explains, to this court's satisfaction, why Debtor did not report the same to Plaintiff or the police. There is simply no evidence to persuade this court that Debtor's failure to notify Plaintiff or the police caused injury to Plaintiff or Plaintiff's property, or that such injury was willful and malicious.

      Debtor did not explain why he failed to notify his insurance carrier once he learned of the damage to the skatepark, except to say that he was unaware that any insurance proceeds would have flowed to Plaintiff had a successful claim been made. The court finds that Debtor's failure to report the Incident to his insurance carrier was not due to malice. Additionally, Plaintiff did not establish that any injury was caused by Debtor's failure to notify his insurance carrier. Plaintiff did not introduce into evidence a copy of Debtor's insurance policy to show whether Plaintiff might have been able to recover some of his losses had Debtor timely filed a claim. However, even if Plaintiff had introduced the insurance policy and established injury, the complete absence of evidence that Debtor acted with malice when he failed to report the Incident would still be fatal to Plaintiff's claim. Thus, Debtor's failure to report the Incident cannot form the basis of a finding of nondischargeability under Code section 523(a)(6). For the foregoing reasons, Plaintiff's complaint seeking to except his debt from discharge under Code section 523(a)(6) is denied.

      A separate judgment dismissing the complaint will be entered in accordance with Fed. R. Bankr. P. 9021.

Dated: April 7, 2009                                      /s/ Hon. Margaret Cangilos-Ruiz
      Syracuse, New York                           Hon. Margaret Cangilos-Ruiz
                                                                   U.S. Bankruptcy Judge